Norma **DAVIS**, through her next friend,
Denise Swilley, Plaintiff,

v.

Elliot L. **RICHARDSON**, Secretary of
Health, Education and Welfare for the
United States of America, Defendant.

Civ. No. 13903.

United States District Court,
D. Connecticut.

May 8, 1972.

Ronald Gold, Hartford, Conn. (James N. Cohen and George N. Gingold, Hartford, Conn., of counsel), for plaintiff.

B. Blair Crawford, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., D. Conn., of counsel), for defendant.

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION

J. JOSEPH SMITH, Circuit Judge:

This case presents the court with a challenge to a provision of the Social Security Act, 42 U.S.C. § 301 et seq., which discriminates against illegitimate children in the payment of benefits on the death of a wage-earning parent. Norma Davis, an eight-year-old child, has been denied payments based on her deceased father's earning record because, under 42 U.S.C. § 403(a), as an illegitimate child entitled to benefits under 42 U.S.C. § 416(h) (3), she loses her benefits if the family award is not sufficient to meet the maximum payments due the wife and legitimate children of her father. She requests declaratory and injunctive relief against the continued enforcement of this provision of the law, pursuant to which the Secretary of Health, Education and Welfare denied her request for benefits. A three-judge court was convened pursuant to 28 U.S. C. §§ 2282, 2284 to hear a constitutional challenge to the continued enforcement of a federal statute.

Fred Davis, Jr., the wage-earner and father of Norma, died in Connecticut on January 22, 1968. Denise Swilley, Norma's mother, applied for benefits for the child. The Social Security Administration determined that for purposes of the Act, Norma was Davis' "child." 42 U. S.C. § 402(d); 42 U.S.C. § 416(h) (3). It was compelled, though, to apply 42 U. S.C. § 403(a) (3), which states that a

child who attains the right to benefits through section 416(h) (3), as Norma does, may receive only the residual, if any, of the maximum family grant remaining when other individuals entitled to benefits have taken their maximum grants. In this case, Mrs. Davis and the four children of her marriage to Mr. Davis absorbed the maximum family grant. Norma therefore received nothing.

After the initial decision, reconsideration, a hearing and a review of the hearing examiner's decision were concluded adversely to the plaintiff, she had exhausted administrative remedies and brought this suit. The background is undisputed and relatively straightforward. Norma was born out of wedlock to Denise Swilley on February 25, 1963. Mr. Davis acknowledged Norma as his child in April of that year, and although he was not living with her when he died, he regularly contributed $7.00 a week to her support and bought clothes for her. When Mr. Davis died, his wife applied for and received benefits for herself and their four legitimate children. The maximum family amount payable on Fred Davis' earning record, calculated on the basis of his primary insurance amount, was $362.40. 42 U.S.C. §§ 403(a), 415(a). The maximum individual grants which Mrs. Davis and her children could have received exceeded this sum, leaving no residual for Norma.

The statutory provisions which form the basis for the discrimination are those which define a "child" under the Act.[1] There are at present three tests for determining whether an individual is a "child" of a wage-earner. Under 42 U.S.C. § 416(h) (2) (A), the Secretary applies the state definition of child under its law on intestate succession of personal property to determine who is a child for Social Security purposes. Sec-

tion 416(h) (2) (B) provides that the applicant is a "child" if the wage-earner and father or mother of the child went through a marriage ceremony resulting in a purported marriage which would be valid but for lack of dissolution of a previous marriage or a procedural defect in the purported marriage. The third method, included for the first time in 1965, provides in section 416(h) (3) that an applicant is deemed a child if the insured deceased individual had acknowledged in writing that the applicant was his son or daughter, had been decreed by a court to be the father of the applicant, or had been ordered by a court to contribute to the applicant's support; or if the insured is shown to the satisfaction of the Secretary to be the father of the applicant and was living with or contributing to the support of the applicant when he became entitled to benefits.

Norma Davis does not fall within the first group; in Connecticut a child born out of wedlock may not inherit intestate personal property from the father. Arcand v. Flemming, 185 F.Supp. 22 (D. Conn.1960). She does however fall under the last of the above definitions of "child"; she presented evidence of acknowledgement by Fred Davis that she was his daughter and she was being regularly supported by him at the time of his death.

Section 203(a) of the Act, 42 U.S.C. § 403(a) delineates the manner in which payments of monthly benefits are to be reduced when the total of benefits to which qualified individuals are entitled exceeds the family maximum amount, as is the case here.

\* \* \* Whenever a reduction is made under this subsection in the total of monthly benefits to which individuals are entitled for any month on

---

1. A child who has filed application for child's insurance benefits and was dependent on the insured at the time of death is entitled to a child's insurance benefit for each month, under section 202(d) of the Act, 42 U.S.C. § 402(d). This same section also provides that a child who is the legitimate child of his father or who is deemed to be the latter's child under 42 U.S.C. § 416(h) (3) is deemed to be dependent for purposes of the section.

the basis of the wages and self-employment income of an insured individual, each such benefit other than the old-age or disability insurance benefit shall be proportionately decreased; except that if such total of benefits for such month includes any benefit or benefits under section 202(d) [of this title] which are payable solely by reason of section 216(h) (3) [of this title], the reduction shall be first applied to reduce (proportionately where there is more than one benefit so payable) the benefits so payable (but not below zero). [42 U.S.C. § 403(a) (3)]

Before 1968 this sentence read as follows:

> Whenever a reduction is made under this subsection, each benefit, except the old-age or disability insurance benefit, shall be proportionately decreased.

In effect, the present provision subjects one sub-group of individuals who qualify as "children" under the Act to total deprivation unless all others who deserve payment receive their full statutory share. And among the class of children who qualify under section 416(h) (3), critical differences in the amount of money received occur based on the fortuitous factor of the number of legitimate children the wage-earner had.

The sole issue is whether the provision on reduction of individual benefits to fit the family maximum violates the due process clause because it discriminates against one group of children under the Act. That is, may Congress subordinate the rights of children such as Norma, clearly defined as a "child" under the Act, to those of children who could take their father's personal property by intestate succession? Or, put another way, can the government enforce a provision which distinguishes drastically some children under section 416(h) (3) from others solely on the basis of the number of legitimate children born to their father? In light of recent decisions by the Supreme Court we believe that the answer to both questions is no.

■■ The due process clause of the fifth amendment prohibits, as to the federal government, statutes creating arbitrary discriminations which have no rational basis in legitimate governmental purposes. Although there is no specific equal protection guarantee applicable to the federal government, equal protection standards have been imported into the due process clause of the fifth amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968). Although Congress has great latitude to make classifications in the area of economic and welfare legislation, a provision must have some rational basis or be pertinent to some proper objective of the Congress in order to withstand challenge.

Before 1965, no illegitimate children, even if dependent on their wage-earner parent, were entitled to benefits under the Act. But in 1965, the provision under which Norma falls was added to the law. Congress made a decision to broaden the class of eligible children to include those illegitimate children who are acknowledged or supported by the wage-earner, to reflect the fact of actual dependency. This amendment did not alter, but rather further implemented, the fundamental purposes of the Act.[2] State law was no longer the sole deter-

2. At the same time it enacted the provision on inclusion of certain illegitimate children, the Senate attempted to raise the maximum family monthly payment so that the inclusion of these children would not cause reduction of benefits.

The House bill, which included no such increase, was adopted by the Conference, without explanation. 1967 U.S.Code Cong. and Admin.News pp. 2834, 2844–45, 2923–29, 3199.

minant of status as a child under the Social Security Act; Norma Davis is clearly a child of Fred Davis for purposes of federal law.

The inclusion of this provision on illegitimate children did not entail the problems often cited as justifications for distinguishing between legitimate and illegitimate children. No problems of proof of paternity after the father's death are raised by the provision. He must acknowledge the child or undertake an obligation to support before his death. Spurious and tardy claims are therefore precluded. In this case, Fred Davis had acknowledged Norma two months after her birth and was supporting her, as he was required by Connecticut law to do. Therefore, the Secretary's argument that Congress was justified in enacting section 203(a) because legitimate children are more likely to have been supported by their fathers or to have been more generously provided for is unfounded. The group is limited to children receiving support and legally entitled to it. See Franklin v. Congolesi, 6 Conn.Cir. 357, 273 A.2d 291 (1970).

Four Supreme Court decisions on the rationality of state laws discriminating against illegitimate children have been decided in recent years. These cases seriously undermine the common law doctrine that an illegitimate child is "nullius filius" and hold that he or she is a "person" within the meaning of the fourteenth amendment. In Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L. Ed.2d 436 (1968), the Court held impermissible a Louisiana law which did not allow illegitimate children, dependent on their mother for support, to recover for her wrongful death. The Court found the fact of out-of-wedlock birth irrelevant to the deprivation of the source of support and an unreasonable basis for a windfall to the tort-feasor. Nor was the law a legitimate tool for the discouragement of births out of wedlock. The pro-

vision was found violative of the fourteenth amendment.

Another Louisiana law was struck down in Glona v. American Guarantee and Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). Under the statute a mother could not collect wrongful death benefits for the death of her illegitimate son. Although one factor in the Levy decision was absent (i. e. the fact that the child there had done nothing "wrong" in bringing himself into being for which the law could be a deterrent), the Court found that it was irrational to assume that deprivation of recovery for the death of a child would discourage a mother from bearing her or him.

In Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), the Court upheld as reasonable against an equal protection challenge a state intestate succession statute which permitted illegitimate children to inherit only to the exclusion of the state. The Court felt that though possibly unwise, this expression of legislative policy on the ordering of family relations and disposition of property was not completely arbitrary. Nor was the rule an insurmountable bar to the child's inheritance, for the father could leave property by will or legitimate the child for intestacy purposes.[3]

Weber v. Aetna Casualty and Surety Co. struck down a discrimination against illegitimate dependent children in Workmen's Compensation law. 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

This case is distinguishable from Labine. No deference is due to state policies on issues of local concern, such as family law; Congressional declarations of policy and constitutional limitations on that action are the only relevant standards. And the law in this case is an insurmountable barrier to Norma. Fred Davis did all he could, short of divorcing his wife and marrying Norma's

3. This case concerned a Louisiana law; in that state, the old French system includes numerous sanctions against illegitimacy.

mother, to entitle her to benefits. He acknowledged her in a bastardy proceeding. He paid regular support contributions. Leaving her property in a will would not have affected her entitlement under this provision.

Nor is there any validity in the government's argument that Congress had a legitimate basis for the distinction in a desire to preserve the family unit. Such considerations are foreign to this statute, which is meant as insurance for those dependent on the wage-earner. The Court gave short shrift to similar arguments in *Weber*. The extension of the Act in 1965 to cover illegitimate children such as Norma indicated that Congress saw this provision of support as the function of the law. Congress has acted with the clear intent of affecting family structure in other areas (such as welfare); regardless of their success in obtaining the results they desire, it is clear that this law was not one intended to serve that function.

■ The purpose of the Old Age, Survivor and Disability Insurance is "to protect workers and their dependents from the risk of loss of income due to the insured's old age, death, or disability." Delno v. Celebrezze, 347 F.2d 159, 161 (9th Cir. 1965); S.Rep.No.1669, 1950 U.S.Code Cong.Serv. p. 3288. The purpose of children's benefits is to provide at least some measure of income and security to those who have lost a wage-earner on whom they depended. This is a federal policy, unrelated to state or local laws on marriage or inheritance flowing from the state's power to regulate domestic relations and the passage of property within that state.

■■ We think, therefore, that it is an invidious discrimination, unrelated to the purpose of the law and to any legiti-

mate legislative consideration governing the Social Security Act, to reduce the benefits of one group of "children," otherwise fully qualified under the Act, because their entitlement rests on one of three possible statutory grounds. Their total exclusion from benefits (or receipt of varying amounts depending on the number of children in the family otherwise) is a distortion of the policies behind the Act and is not related to any of the state interests that the defendants put forward.

Those courts which have ruled on challenges to this provision have come to differing conclusions.[4] In Jordan v. Finch, No. 32–69 (D.N.J.1970), the court found the provision violative of the purposes of the Social Security Act and of the fifth amendment. The suit was brought to require benefits for one child and did not seek to enjoin the enforcement of the provision generally. In holding the law impermissible, the court said:

> Biological, sociological and economic questions aside, the law may not carefully define a legal class, entitle them to benefits and then state that part of that class, under certain circumstances unrelated to the purposes of the statute, merely because of birth, is inferior to the remainder of the class.

For these reasons, we grant summary judgment to the plaintiff and enjoin the enforcement of this provision. Though illegitimacy may be a social problem, the class of children which includes Norma has been either acknowledged or supported regularly by their parent. To distinguish them from other children with the same needs and the same parent, solely on the basis of a condition of birth, when Congress had declared them entitled to benefits, is impermissible. The Court in *Weber* refused to allow the state to make such a discrimination.

4. In light of the Supreme Court's recent decision in Weber v. Aetna Casualty and Surety, supra, we do not regard as controlling earlier decisions relying on Labine v. Vincent, supra, to hold the provision constitutional. See, e. g., Parker v. Secretary of Health, Education and Welfare, 453 F.2d 850 (5th Cir. 1972); Watts v. Veneman, 334 F.Supp. 482 (D.D.C.1971); Garner v. Richardson, 333 F.Supp. 1191 (N.D.Cal.1971). Contra, Bridges v. Finch, Civ. No. 69–1327 (E.D.N.Y. Nov. 24, 1971) (dictum).

Consistently with the Court's reasoning in Bolling v. Sharpe, *Weber* must be applied to the federal legislation also. The foregoing may be considered the court's findings and conclusions under Fed.R. Civ.P. 52(a).

Form of judgment may be submitted on notice.