Gregory B. NORTON, Jr., a minor, by his next friend, Marian B. Chiles, Individually and on behalf of all others similarly situated,

v.

Caspar WEINBERGER, Secretary, Department of Health, Education and Welfare, Individually and in his official capacity.

Civ. No. 72–271–B.

United States District Court,
D. Maryland.

Sept. 14, 1973.

C. Christopher Brown, and Michael Berman, Baltimore, Md., for plaintiffs.

Harlington Wood, Jr., Asst. Atty. Gen., Harland F. Leathers and Bruce E. Titus, Attys., Dept. of Justice, Washington, D. C., George Beall, U. S. Atty. for the District of Maryland, and Jeffrey White, Asst. U. S. Atty., Baltimore, Md., for defendant.

Before WINTER, Circuit Judge, and MURRAY and BLAIR, District Judges.

## OPINION

BLAIR, District Judge.

Gregory Norton, Jr., on behalf of himself and all others similarly situated, challenges the constitutionality of § 216(h)(3)(C)(ii) of the Social Security Act, 42 U.S.C. § 416(h)(3)(C)(ii) and seeks to restrain its enforcement. This three judge court has been convened to decide the constitutional question. The

case is before the court on cross-motions for summary judgment, the essential facts not being in dispute.

To understand the issues involved, it is important at the outset to examine the pertinent statutory framework.[1] Under the Social Security Act, the child of a deceased wage earner who was dependent on the wage earner at the time of the wage earner's death is entitled to child's insurance benefits. 42 U.S.C. § 402(d)(1)(C)(ii). A legitimate child, being the wage earner's offspring and presumed dependent, automatically qualifies for benefits. 42 U.S.C. §§ 416(e)(1) and 402(d)(3)(A). An illegitimate child also can receive benefits, but he or she must first qualify under one of several alternative provisions. An illegitimate child who could, under the intestacy law of the wage earner's domicile, inherit the wage earner's personalty is eligible for benefits upon proof that the wage earner was the parent and that at the time of death, the wage earner lived with or contributed to the support of the child. 42 U.S.C. §§ 416(h)(2)(A), 416(e)(1), and 402(d)(3). An illegitimate who is the child of a marriage invalid because of the existence of an impediment when the marriage ceremony was performed is entitled to receive benefits. 42 U.S.C. §§ 416(h)(2)(B), 416(e)(1) and 402(d)(3). Or, an illegitimate may qualify for benefits if it is shown that the wage earner prior to his death either (1) had acknowledged in writing that the illegitimate child was his son or daughter, (2) had been decreed by a court to be the father of the illegitimate child, or (3) had been ordered by a court to contribute to the support of the illegitimate child because he was the father. 42 U.S.C. §§ 416(h)(3)(C)(i), 416(e)(1) and 402(d)(3). Those illegitimate children unable to provide a written acknowledgment, a paternity decree, or a support order may still qualify for benefits under 42 U.S.C. § 416(h)(3)(C)(ii), the challenged pro-vision, if the wage earner is shown by evidence satisfactory to the Secretary to be the father and the wage earner was living with or contributing to the support of the illegitimate child at the time of his death. 42 U.S.C. §§ 416(h)(3)(C)(ii), 416(e)(1) and 402(d)(3).

Gregory Norton, Jr., an illegitimate child, sought child's insurance benefits after the death of his reputed father, Gregory Norton, Sr. Not being able to provide a written acknowledgment of paternity, and a paternity decree or support order never having been obtained during the lifetime of Gregory Norton, Sr., he was forced to rely on § 416(h)(3)(C)(ii) to establish his right to benefits. He was denied benefits by the Secretary of H.E.W. after the appeal board affirmed the hearing examiner's conclusion that he failed to meet the requirements of § 416(h)(3)(C)(ii). Although the hearing examiner found Gregory Norton, Jr. was the son of Gregory Norton, Sr., he held that Gregory Norton, Sr. was not living with or contributing to the support of his son at the time of his death. Suit was thereafter filed on Gregory Norton, Jr.'s behalf by his maternal grandmother, Marian B. Chiles, in the federal district court. Alternative relief was prayed. Plaintiff asked the court to either rule that the Secretary's decision denying benefits for failure to meet § 416(h)(3)(C)(ii)'s "living with or support by" requirement was incorrect and that Gregory Norton, Jr. had in fact qualified or, if the Secretary's decision was correct, to declare § 416(h)(3)(C)(ii)'s "living with or support by" requirement unconstitutional, enjoin its further enforcement, and direct the Secretary by mandamus-like writ to commence payments.

The single judge court, addressing the nonconstitutional claim first, Wyman v. Rothstein, 398 U.S. 275, 276, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970); Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), found the

---

1. The pertinent provisions are set out in an appendix. Emphasis has been added to the language directly relevant to the court's explication of the statute.

Secretary's decision was based on "substantial evidence" and correct under the terms of the statute. 42 U.S.C. § 405(g). The court then examined the constitutional claim, found it to be substantial, and requested the convening of a statutory three judge court to decide the constitutional question. *See* Norton v. Richardson, 352 F.Supp. 596 (D.Md. 1972).

### I.

Two preliminary points should be resolved before the merits of the constitutional issue are reached.

Plaintiff, at the oral hearing, requested this court to review the single judge's ruling as to the correctness of the Secretary's decision.

Earlier, plaintiff had requested the single judge to review the Secretary's decision, although the request was predicated on the condition that the single judge find that the Secretary's decision was not supported by substantial evidence. The single judge proceeded to decision of the question and concluded otherwise. Plaintiff now urges that the three-judge court has jurisdiction to review the Secretary's decision and indeed should do so, because if it rules that the Secretary's decision was erroneous because not supported by substantial evidence, the necessity of a decision on the constitutional question would be avoided. Wyman v. Rothstein, 398 U.S. 275, 276, 90 S.Ct. 1582, 26 L.Ed. 218 (1970); Rosado v. Wyman, 397 U.S. 397, 403, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970).

The right of a single judge on his own motion to decide nonconstitutional questions before asking that a three-judge court be convened is the subject of some

dispute between the circuits.[2] It is a power which has been exercised, albeit in factual circumstances distinguishable from the case at bar. Manifestly, the writer was satisfied that he possessed the power. The three-judge court, however, takes no position on the correctness of the writer's views, because it is satisfied that the single judge's determination was correct. Stated otherwise, the three-judge court finds it unnecessary to determine if the single judge did or did not have authority to decide nonconstitutional questions on his own motion because if the question of the substantiality of the evidence to support the Secretary's determination were before it, it would arrive at the same result for the reasons advanced by the single judge.

The other preliminary point requiring initial consideration concerns plaintiff's request that the case be certified as a class action. The single judge deferred ruling on this point until this court was convened.[3] *See*, 352 F.Supp. at 601. Although the defendant has opposed such certification, the court believes the request is proper and should be granted. This action is clearly one coming under Rule 23(b)(2) in that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . ." Moreover, the court finds the prerequisites of Rule 23(a) to have been met since "(1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties

---

2. *Compare* Bryant v. Carleson, 444 F.2d 353, 358–359 (9th Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971); Kelly v. Illinois Bell Telephone Co., 325 F. 2d 148, 151 (7th Cir. 1963); Chicago, Duluth & Georgian Bay Transit Co. v. Nims, 252 F.2d 317, 319 (6th Cir. 1958); Doe v. Lavine, 347 F.Supp. 357, 359–360 (S.D.N.Y.1972); Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481, 485 (D.Conn.1972);

*with* Weintraub v. Hanrahan, 435 F.2d 461, 463 (7th Cir. 1970); Fort v. Daley, 431 F. 2d 1128, 1132 n. 4 (7th Cir. 1970).

3. Plaintiff also requested a preliminary injunction, which request was properly referred by the single judge to this court. 28 U.S.C. §§ 2282, 2284(5). Because the court today considers final relief, the preliminary injunction request is moot.

are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. . . ." As required by Rule 23(c), the court defines the plaintiff class in this suit to include all of those persons otherwise eligible for child's insurance benefits under 42 U.S.C. § 402(d)(1) but who cannot qualify for such child's insurance benefits solely because they cannot meet the requirement of 42 U.S.C. § 416(h)(3)(C)(ii) that they be living with or supported by their father on the date of his death.

## II.

The constitutional challenge plaintiff presents is that 42 U.S.C. § 416(h)(3)(C)(ii), as written, violates the due process clause of the Fifth Amendment, which proscribes irrational discrimination in federal legislative classifications. United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S. Ct. 2821, 37 L.Ed.2d 782 (1973); United States Dept. of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Plaintiff contends that § 416(h)(3)(C)(ii) impermissibly discriminates against a sub-class of illegitimate children who, although they can prove their paternity, cannot qualify for child's insurance benefits because § 416(h)(3)(C)(ii) requires that they be living with or supported by their father on the date of his death. Plaintiff contends the requirement of proof that the father lived with or supported his illegitimate child is irrational and that this court, by a declaration

of unconstitutionality and injunction, should excise the offending requirement from § 416(h)(3)(C)(ii) leaving the remainder of that section so as to permit any illegitimate child who can prove paternity able to qualify for child's insurance benefits if otherwise eligible.

Because the equal protection clause of the Fourteenth Amendment prohibits irrational discrimination in state legislative classifications, courts have utilized an equal protection type of analysis in evaluating federal legislation under the due process clause of the Fifth Amendment. *E. g.*, United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S. Ct. 2821, 37 L.Ed.2d 782 (1973); Frontiero v. Richardson, 411 U.S. 677, 93 S. Ct. 1764, 36 L.Ed.2d 583 (1973); Richardson v. Belcher, 404 U.S. 78, 92 S. Ct. 254, 30 L.Ed.2d 231 (1971). Before considering plaintiff's claim, it is first necessary to decide what equal protection standard should apply. Plaintiff contends strict scrutiny is appropriate; defendant, on the other hand, argues for the rational basis test.

Traditionally, two equal protection approaches have been used by the courts in evaluating legislation. Under one approach, commonly referred to as the "rational basis" test, a statute is evaluated to determine if it has some conceivably valid aim, and if the classification utilized in any way furthers that end.[4] The statute is presumed valid and any proper and related means are sufficient to uphold the statute against an equal protection challenge. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Two Guys from Allentown v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961). Only statutes aimed at an end beyond the state's power to legislate, or which are patently arbitrary or lacking in rational justification are invalid under the rational basis test. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Skinner v. Oklahoma, 316

---

4. Courts have often shown considerable imagination in this regard. *See, for example,* Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct.

198, 93 L.Ed. 163 (1964); Kotch v. River Port Pilot Comm'rs., 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947).

U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). *See generally,* Note, "Developments in the Law: Equal Protection", 82 Harv.L.Rev. 1065 (1969). Under the second approach, a legislative classification is evaluated to determine if it is based upon suspect criteria or imposes upon a fundamental, constitutionally secured right. If so, it is "inherently suspect" and "strict scrutiny" will be applied and the statute, no longer presumed constitutional, will be invalid under the equal protection clause unless it is directly related to a compelling governmental interest. Statutes subject to strict scrutiny bear a heavy burden of justification which few, if any, survive. In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 531 (1971); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). *See generally,* Note, "Developments in the Law: Equal Protection", *supra.* Because of the disparity of results of the two approaches, many modern equal protection controversies have focused on whether a fundamental right or suspect criteria was involved. If so, the statute was usually held invalid; if not, the statute was frequently upheld.

The current Supreme Court in utilizing the rational basis test appears to now require legislation to have a closer nexus to its purpose than was customarily demanded under the rational basis test in earlier cases. Strict scrutiny, however, is still applied as a test when classifications are suspect or fundamental constitutional rights are implicated. Thus, while a suspect class or fundamental right will still invoke strict scrutiny —e. g., In re Griffiths, *supra*—the court, when dealing with other classifications under the rational basis test, appears more willing to examine the relationship between a statute's means and ends than earlier courts and to require that the relationship be substantial. The means, it would seem, under the ra-

tional basis analysis, must bear a direct and primary correlation to an actual statutory goal or purpose. This new equal protection position was lucidly discussed by Professor Gunther in "The Supreme Court 1971 Term", 86 Harv.L. Rev. 1 (1972) and has been recognized by the Fourth Circuit in Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973). *See also,* Mr. Justice Rehnquist's dissent in Weber v. Aetna Casualty Co., 406 U. S. 164 at 177, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

■ Closely analyzing plaintiff's claim—as was done in San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)—it is clear that this is not a case calling for the application of strict scrutiny. To begin, no suspect class is here involved. No case has yet, although there have been ample opportunities, held that a classification based upon illegitimacy is *per se* suspect as a classification involving status of birth. Moreover, the class § 416(h)(3)(C)(ii) establishes is not coterminous with the class of illegitimates; rather, the class it establishes is a specific sub-class of the group of illegitimates as a whole, for it is clear that many illegitimates can qualify under § 416(h)(3)(C)(ii) and other provisions in the Act. Jimenez v. Richardson, 353 F.Supp. 1356 (N.D.Ill.1973). Strict scrutiny is thus not demanded because a suspect classification is at hand. And neither is there a fundamental, constitutional right of which § 416(h) (3)(C)(ii) deprives a class. It has been repeatedly held by recent Supreme Court decisions that there is no constitutional right to social welfare and that strict scrutiny does not apply to welfare legislation. Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

While strict scrutiny does not apply, it would appear this case calls for the application of the new rational basis approach. Weber v. Aetna Casualty Co.,

406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), perhaps the Supreme Court's most definitive pronouncement on the equal protection rights of illegitimates, emphasized the new approach. *See also*, Mr. Justice Rehnquist's dissent, *supra* at 177, 92 S.Ct. 1400. In accordance with the direction of the Supreme Court's latest equal protection position, the court shall examine § 416(h)(3)(C)(ii) under the rational basis test to see if it bears a substantial relationship to the purpose of the Social Security Act and is free of invidious discrimination. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973).

Several Supreme Court decisions have considered laws dealing with illegitimacy. It is within the framework of these decisions that the examination of § 416(h)(3)(C)(ii) must proceed. The first two cases—Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968)—invalidated judicially construed restrictions in the Louisiana wrongful death statute which denied a right to recover on the basis of illegitimacy. In *Levy,* the court ruled that Louisiana could not prevent an illegitimate child from recovering for the wrongful death of its mother solely because the child was illegitimate where, had the child been legitimate, a right of recovery would have been provided. The court assumed the illegitimate child was dependent on its deceased mother in the economic, biologic, and spiritual sense and "in her death suffered wrong in the sense any dependent would." Rejecting the argument that the denial of a right of recovery promoted the morals and general welfare of the community by discouraging illegitimacy, the court found there was no sufficient reason for permitting a tort-feasor to escape his wrong merely because a child is illegitimate. The court, in concluding the statute denied equal protection, underscored the lack of any relationship between the legitimacy or illegitimacy of the child and the wrong inflicted upon the mother.

*Glona,* the companion case to *Levy,* similarly declared that the equal protection clause prevented Louisiana from denying a mother a right to recover for the death of her child because the child was illegitimate. Louisiana's argument that its law discouraged sin was dismissed as "far-fetched," the court noting,

> It would, indeed, be farfetched to assume that women have illegitimate children so they can be compensated in damages for their death. A law which creates an open season on illegitimates in the area of automobile accidents gives a windfall to tort-feasors. But it hardly has a causal connection with the "sin", which is, we are told, the historic reason for the creation of the disability. 391 U.S. at 75, 88 S.Ct. at 1516.

The court recognized the potential for fraudulent assertions of motherhood, but noted that this was a problem in burden of proof which had no application in cases where the claimant is "plainly the mother."

Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), a 5 to 4 decision, affirmed Louisiana's intestacy law which denied illegitimates the right to inherit from their fathers even though publicly acknowledged. The court found Louisiana's interest in regulating family life and the disposition of property within its borders to provide a rational basis for the statute sufficient to withstand the equal protection challenge. The court distinguished *Levy* and *Glona* with the observation that, since a father could leave part of his property to a legitimated child (i. e.—one who was publicly acknowledged) the state had not erected an insurmountable barrier to the child's recovery, as was the case in the previous two decisions. The court felt that *Levy* and *Glona* did not prevent a state from ever treating illegitimates differently than legitimates and that Louisiana's disparity of treat-

ment in its intestacy laws was constitutionally permissible.

Later decisions appear to have eroded the vitality of the majority's opinion in *Labine* and indicate that the minority view of the four dissenting judges, all of whom are still on the Court, is more in line with the Court's current stance. The minority opinion, authored by Mr. Justice Brennan, found the Louisiana intestate statute to invidiously discriminate against illegitimates without rational justification and that the classifications established in the statute bore no intelligible or proper relationship to the consequences flowing from it. Mr. Justice Brennan noted that in *Levy*, an acknowledged illegitimate could have recovered and that, therefore, *Levy* did not involve an insurmountable barrier as the majority supposed. Moreover, he opined that merely because a discrimination fell short of providing an insurmountable barrier did not immunize it from the Fourteenth Amendment. In considering Louisiana's interest in dealing with problems of proof and reducing the opportunity for error, he stated that when formalities such as a public acknowledgment had been complied with, problems of proof abate.

> When a father has formally acknowledged his child or gone through any state authorized formality for declaring paternity, or when there has been a court judgment of paternity, there is no possible difficulty of proof, and no opportunity for fraud or error. This purported interest certainly can offer no justification for distinguishing between a formally acknowledged illegitimate child and a legitimate one. 401 U.S. at 552, 91 S.Ct. at 1028.

He felt that Louisiana's intestate statute was founded on the state's official policy of discrimination against illegitimates in matters of succession and inheritance and could not be justified as "a legislative judgment about the probable wishes of the deceased or the desires of most persons in similar situations." He recognized a contrary presumption when a father has made a public acknowledg-

ment, commenting that "logic and common experience also suggest that a father who has publicly acknowledged his illegitimate child will *not* generally intend to disinherit his child." (emphasis original).

A key decision for this present case was rendered in Weber v. Aetna Casualty Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), where the court invalidated under the equal protection clause a section of Louisiana's workman's compensation statute which denied dependent, unacknowledged illegitimate children the right to share equally with acknowledged illegitimate and legitimate children. In *Weber*, the deceased, Henry Clyde Stokes, died of injuries received in his employment, leaving four legitimate children and two illegitimate children by the woman he had been living with since his wife's commitment to a mental institution. With the exception of one of the illegitimate children, who was born posthumously, all of the children, including the one illegitimate child, were living with and supported by him at the time of his death. Under the Louisiana law, unacknowledged illegitimate children were entitled to benefits only to the extent such benefits were not exhausted by the claims of the legitimate and acknowledged illegitimate children. Henry Stokes' illegitimate children were not acknowledged and could not be acknowledged under Louisiana law due to Stokes' still existing marriage to his institutionally-committed wife. Because of a large tort settlement against a third party tortfeasor in favor of the legitimate children alone, the workman's compensation benefits were extinguished, with the illegitimate children receiving neither part of the settlement nor any workman's compensation benefits.

The court found the statute to lack a rational basis for its discrimination, following as precedent its decision in *Levy* which proscribed, in the court's view, inequality of treatment of dependent illegitimate children and distinguishing its earlier decision in *Labine* as reflecting

"the traditional deference to a State's prerogative to regulate at death the disposition of property within its borders." The court placed primary emphasis upon the fact that, although dependency was a prerequisite to anyone's recovery, under the Louisiana workman's compensation statute, equal dependents were treated unequally.

> So far as this record shows, the dependency and natural affinity of the unacknowledged illegitimate child for her father were as great as those of the four legitimate children whom Louisiana law has allowed to recover. The legitimate children and the illegitimate child all lived in the home of the deceased and were equally dependent upon him for maintenance and support. . . . The unacknowledged illegitimate . . . is a *dependent child,* and as such, is entitled to rights granted other *dependent children.* (emphasis original). 406 U.S. at 169, 92 S.Ct. at 1403.

The court, again distinguishing *Labine,* pointed out that Louisiana had erected an insurmountable barrier for the illegitimates, since it was impossible for their fathers to acknowledge them so they would receive equal benefits under the statute. Rejecting the argument that the classification furthers Louisiana's interest in family relationships, the court concluded that "[t]he inferior classification of dependent unacknowledged illegitimates bears, in this instance, no significant relationship to those recognized purposes of recovery which workman's compensation statutes commendably serve."

The court, in arriving at its decision in *Weber,* took particular effort to point out that its decision in no way altered "the state interest in minimizing problems of proof. . . ." Louisiana's statute, while making dependency a prerequisite for recovery, also conclusively presumed that dependency was present for those children under 18 who were living with the parent at the time of the injury. The court found no fault with limiting recovery only to actual dependents and accepted the need to draw arbitrary lines in response to problems of proof. As the court wrote:

> Finally, we are mindful that States have frequently drawn arbitrary lines in workmen's compensation and wrongful death statutes to facilitate potentially difficult problems of proof. Nothing in our decision would impose on state court systems a greater burden in this regard. By limiting recovery to dependents of the deceased, Louisiana substantially lessens the possible problems of locating illegitimate children and of determining uncertain claims of parenthood. Our decision fully respects Louisiana's choice on this matter. It will not expand claimants for workmen's compensation beyond those in a direct blood and dependency relationship with the deceased and avoids altogether diffuse questions of affection and affinity which pose difficult probative problems. Our ruling requires equality of treatment between two classes of persons the genuineness of whose claims the State might in any event be required to determine. 406 U.S. at 174, 92 S.Ct. at 1406.

The court's view on this point, as will be related further on, is of crucial importance to this present case.

The next Supreme Court decisions on illegitimacy came in summary affirmances of two three judge court cases declaring unconstitutional § 403(a) of the Social Security Act as a denial of Fifth Amendment due process. Davis v. Richardson, 342 F.Supp. 588 (D.Conn.), affirmed, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972); Griffin v. Richardson, 346 F.Supp. 1226 (D.Md.), affirmed, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed. 2d 660 (1972). *See also,* Morris v. Richardson, 346 F.Supp. 494 (N.D.Ga. 1972), vacated on other grounds, 409 U. S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973); Maracle v. Richardson, 348 F. Supp. 234 (S.D.N.Y.1972); Williams v. Richardson, 347 F.Supp. 544 (W.D.N.C. 1972). Section 403(a) of the Social Security Act limited the benefits §

416(h)(3) children received to those that remained only after other qualifying children received a full share out of a maximum family allowance. Both *Davis* and *Griffin* found this discrimination to lack a rational relationship to the purpose of the Social Security Act. The courts noted that the Social Security Act set up a class of beneficiaries eligible for benefits but who were arbitrarily denied full participation rights. They pointed to the absence of proof problems resulting from the need of the § 416(h)(3) children to qualify initially and to the strong probability of actual dependency which must have been demonstrated to meet the requirements of § 416(h)(3). The courts discounted the government's argument that § 403(a) promoted family relationships and discouraged illegitimacy and found that § 403(a) denied due process of law.

The last Supreme Court decision instructive on this question was Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L. Ed.2d 56 (1973).[5] Texas, while granting legitimate children a judicially enforceable right to support from their fathers, denied the same to illegitimates. For this reason, the Texas courts denied the plaintiff's suit for support, although plaintiff had established paternity to the court's satisfaction. Juxtaposing the right afforded legitimate children with the denial of that right to illegitimate children, the court found an "unmistakeable" violation of equal protection rights. In the court's words:

> Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because her natural father has not

married her mother. For a State to do so is "illogical and unjust." 409 U.S. at 818, 93 S.Ct. at 875.

While recognizing the "lurking problems with respect to proof of paternity" and admitting that they "are not to be lightly brushed aside," the court held that "neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

■ Other Supreme Court cases, although not directly concerned with illegitimacy, have dealt with the problem of discrimination in social welfare legislation. The general principle established by these decisions is that invidious discrimination which is not rationally related to the statute's purpose is impermissible. United States Dept. of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). However, the cases recognize also that social welfare legislation cannot be expected to be surgically precise in its classification and the existence of some discrimination incidental to the statute's goal and the means used to achieve it will not make the statute constitutionally infirm under either the Fifth or Fourteenth Amendments. Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). What the Court stated in *Dandridge, supra* at 485, 90 S. Ct. at 1161, in regard to equal protection:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made

---

5. *See also*, Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), an illegitimacy case which was dismissed for lack of standing.

with mathematical nicety or because in practice it results in some inequality." it later reaffirmed in *Richardson, supra,* 404 U.S. at 84, 92 S.Ct. at 258, for due process:

> We have no occasion, within our limited function under the Constitution, to consider whether the legitimate purposes of Congress might have been better served by applying the same offset to recipients of private insurance, or to judge for ourselves whether the apprehensions of Congress were justified by the facts. If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.

The child's insurance benefits provision of the Social Security Act is founded on the dual concepts of parentage and dependency. To be eligible for benefits, a claimant must be both the child of and dependent upon the deceased wage earner. 42 U.S.C. § 402(d)(1). The purpose of the Act, consistent with this dual concept, is to replace the support lost to a child when the wage earner dies. What must now be determined is whether § 416(h)(3)(C)(ii)'s requirements bear a direct and substantial relationship to this purpose.

Plaintiff, not disputing the dependency focus, argues that the Social Security Act does not require actual dependency, but is satisfied by potential dependency. What the benefits provided are intended to replace is not actual support, but the loss of the right to support. While this contention is facilitating to plaintiff's postition, it is not, in this court's opinion, consistent with the Act's purpose, intent, or requirements. In amending the Social Security Act to include § 416(h)(3), the Senate Report described the Act as "a national program that is intended to pay benefits to replace the support lost by a child when his father . . . dies. . . . ." Senate Report No. 404, 1965 U.S.Code Congressional and Administrative News, p. 2050. The cases interpreting the child's insurance provisions have similarly concluded that the Act is founded on actual dependency. Davis v. Richardson, 342 F.Supp. 588 (D.Conn.), affirmed, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972); Jimenez v. Richardson, 353 F.Supp. 1356 (N.D.Ill. 1973); Watts v. Veneman, 334 F.Supp. 482 (D.D.C.1971), affirmed in part, reversed in part on other grounds, 476 F. 2d 529 (D.C.Cir.1973). Moreover, the mere fact that the provision plaintiff challenges requires proof of actual dependency belies the conclusion that the Act is directed to potential dependency.[6]

The whole thrust of § 416(h)(3)(C)(ii) is that of determining both the biological connection and the dependency required by the Act for benefits. The provision requires some proof sufficient to the Secretary of actual paternity. It then requires proof that the illegitimate

---

6. Plaintiff cites, in support of his position that potential dependency or the right to support are all that is required, a section of House Senate Conference Committee Report on the 1965 Amendment to the Social Security Act adding 42 U.S.C. § 416(h)(3), 111 Cong. Record 18387, which reads as follows:

> A child would be paid benefits based on his father's earnings without regard to whether he has the status of a child under State inheritance laws if the father was supporting the child or had a legal obligation to do so.

While the report speaks of paying benefits if "the father was supporting the child or had a legal obligation to do so," it was not speaking of § 416(h)(3)(C)(ii) alone, but was also talking in reference to § 416(h)(3)(C)(i) which established the paternity decree, court order, or written acknowledgment test. Illegitimates who could establish claims under § 416(h)(3)(C)(i) would, in most instances, legally be entitled to support from their fathers. Such was not always the case with illegitimates unable to meet § 416(h)(3)(C)(i)'s criteria. See, e. g., Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). This legislative history does not, from this court's reading, establish that the Social Security Act is based on potential, rather than actual, dependency. Rather, the report is descriptive of the Act's effect.

child whose paternity is proven establish either that he or she actually was supported by the wage earner on the date of his death or, alternatively, that he or she lived with the wage earner on the date of his death, the presumption being that a wage earner's children who live with him are supported by him. Those children who prove § 416(h)(3)(C)(ii)'s dual elements satisfy the Social Security Act's prerequisites of being the wage earner's child and dependent upon him, and, if otherwise qualified, they share equally with all other qualified dependent children of the deceased wage earner.

■ A statute can treat illegitimate children differently than legitimate children as long as the distinction is based upon rational grounds. Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971); *cf.* Weber v. Aetna Casualty Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). It is not invidious discrimination to require § 416(h)(3)(C)(ii) children to establish the dual elements of paternity and dependency when such is not required of legitimates and those illegitimates qualifying under § 416(h)(2)(B) or § 416(h)(3)(C)(i). The parentage of legitimate children is not in issue and it is clearly rational to presume the overwhelming number of legitimate children are actually dependent upon their parents for support. Likewise, the parentage of the children of an invalid marriage would not normally be in dispute and such children would typically live in the wage earner's home or be supported by him. Although the illegitimate § 416(h)(3)(C)(i) children need not offer proof to the extent that the § 416(h)(3)(C)(ii) children must, it is rational to afford them the same presumptions as the legitimate children or children of invalid marriages. For those with a paternity decree or support order, a judicial tribunal will have already addressed the parentage issue and resolved it for the illegitimate child. When an order of support is entered by a court, it is reasonable to assume compliance occurred. A paternity decree, while not necessarily ordering support, would almost as strongly suggest support was subsequently obtained. Conceding that a written acknowledgment lacks the imprimatur of a judicial proceeding, it too establishes the basis for a rational presumption. Men do not customarily affirm in writing their responsibility for an illegitimate child unless the child is theirs and a man who has acknowledged a child is more likely to provide it support than one who does not. To presume the acknowledged child's paternity and dependency is rational.

Unlike the statute in *Weber,* which treated equal dependents unequally, the Social Security Act now affords full equality of treatment between dependent legitimates and dependent illegitimates. It does not treat legitimate children differently from illegitimate children; what it does is treat differently those likely to be the dependent children of the wage earner from those not as likely to be by requiring further or substantiating proof from the latter. That Congress has permitted some simplified, formalistic proof to suffice for the § 416(h)(3)(C)(i) illegitimate children is not impermissible discrimination. The dissent in *Labine* recognized the propriety of establishing formalities like an acknowledgment to surmount problems of proof. In like manner, the *Weber* court, as before mentioned, recognized that arbitrary lines as to problems of proof occasionally must be made and emphasized that its decision fully respected the statutory choice as long as those equally within the statute's purpose were not treated unequally under the statute.[7]

---

7. Other arbitrary lines having nothing to do with illegitimacy are also perforce drawn in defining benefit entitlement consistent with the Act's purpose. For instance, a 19-year-old who was not a full time student or disabled, although perhaps dependent, would not

The Social Security Act has not placed impenetrable barriers of proof before illegitimates who seek to qualify. Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971); *cf.* Weber v. Aetna Casualty Co., 406 U.S. 164, 92 S. Ct. 1400, 31 L.Ed.2d 768 (1972). It provides in § 416(h)(3)(C)(i) alternative and simplified methods of proof consistent with the Act's purpose, and for those unable to utilize the formalistic methods, it provides a catch all provision —§ 416(h)(3)(C)(ii)—designed to enable those the Act intended to cover to qualify. Under the Social Security Act, an illegitimate child had a variety of ways of demonstrating entitlement, none of which are impervious to any illegitimate factually within the Act's intendment.

This is not a situation similar to Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), where Texas law afforded illegitimates no rights while affording rights to legitimates. Here, the Social Security Act permits illegitimates who can prove entitlement to receive benefits. The court believes that the Supreme Court in *Gomez* would have found no denial of equal protection had Texas law enabled illegitimates to obtain paternal support to the same extent as legitimates provided they demonstrated their entitlement by proving their paternity to the court. Nor does this court believe the *Gomez* court, which recognized the "lurking problems with respect to proof of paternity," would have found a denial of equal protection in requiring some illegitimates to prove their paternity before support was ordered when such was not required of legitimates or

certain illegitimates who had complied with statutorily defined formalities regarding the question of proof.

Plaintiff's problem—and the underlying reason for his failure to qualify—is that the child's insurance benefits provisions of the Social Security Act were never intended to cover Gregory Norton or the class he represents. These provisions were designed, not to provide support a child never had, but to replace support lost on the death of the wage earner upon whom the child depended. This choice was unquestionably one Congress, faced with finite resources, could make. Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L. Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Although Gregory Norton, Jr. may well have been the child of Gregory Norton, Sr., he was never supported by his father. Because of this lack of dependency, he was never intended by Congress to receive the wage benefits Gregory Norton, Sr. may have earned. In short, he could not comply with the dependency prerequisite in the Social Security Act. And as the Court in *Weber* made clear, a statute providing benefits to a deceased's children can make dependency a prerequisite to entitlement and thereby solve potentially difficult problems of proof as long as all dependents are treated equally.

What plaintiff would have the court do is excise the dependency requirement from the statute and thereby permit anyone to recover who can prove paternity.[8] Yet, as has been said, the

be eligible for benefits. 42 U.S.C. § 402(d) (1)(B). Nor would a 16-year-old married child of the wage earner, no matter how dependent, be able to obtain child's insurance benefits. 42 U.S.C. § 402(d)(1)(B).

8. Were the court inclined to agree with plaintiff, the relief requested presents practical problems of its own. A court can excise part of an unconstitutional statutory provision only when the remainder will not alter the purpose, scope or operation of the stat-

ute in a way the legislature never intended. United States v. Jackson, 390 U.S. 570, 585, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Fowler v. Gage, 301 F.2d 775, 778 (1962); Poe v. Menghini, 339 F.Supp. 986, 996 (D.C. Kan.1971). To excise the dependency requirement from § 416(h)(3)(C)(ii) would completely alter the purpose, scope and operation of the Social Security Act. Yet if this provision were struck down in its entirety, plaintiff's claim would be completely barred.

Constitution does not require this of the legislature, dependency being a permissible legislative criterion. Weber v. Aetna Casualty Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Whatever may be the wisdom or desirability of providing a dole for all needy children, it is certain that Congress has not done so with the Social Security Act and this court, sitting as arbiter of a constitutional issue, cannot legislate for Congress. The dependency requirement is but one of two prerequisites. Just as this court cannot eliminate the parentage requirement for those children who were dependent on the wage earner but who were not the wage earner's offspring, this court cannot eliminate the dependency requirement for those children who can prove their parentage but who were never dependent on the wage earner.

The lack of coverage for non-dependents in the Social Security Act distinguishes the present case from Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). The Supreme Court in *Levy*, assuming the illegitimate child had the same affinity for and dependency on its mother as any legitimate child, pointed to the lack of any nexus between Louisiana's denial of a right of recovery for wrongful death and the wrong inflicted the child on the death of its mother. Such a nexus does exist in the denial of benefits to Gregory Norton for, never having received support from his father, there was no support for the Social Security Act to replace. While the denial of recovery to the illegitimate child in *Levy* lacked a connection to the purpose of the wrongful death statute, the denial of benefits to Gregory Norton directly emanates from the Social Security Act's *raison*

*d'etre*. Moreover, in this present case, no wrongdoer—i. e. tort-feasor—receives a windfall from discrimination against a hapless illegitimate who is barred from seeking compensation for a wrong done him. Rather, in this case, a class of children not dependent seeks the right to share equally with those who are. Those who never were supported by their wage earner fathers seek a benefit at the potential expense of others who were so supported.[9]

Moreover, past cases have demonstrated that, under the view that the Social Security Act should be construed to include rather than exclude, the dependency requirement will be liberally interpreted to avoid fortuitous hardship. In *Weber*, the Court noted that in its view, a posthumous illegitimate child, albeit unable to exhibit comparable dependency and affinity to a parent as could a child living at the time of the parent's death, should be treated the same as a posthumous legitimate child. The Social Security Act would provide coverage to a posthumous legitimate child and, under judicial construction, would similarly provide benefits for posthumous illegitimate children born into a household which the deceased wage earner was either living in or supporting at the time of his death. This was the specific holding of the Fifth Circuit in Wagner v. Finch, 413 F.2d 267 (1969). Other courts along this same line have construed the living with or support by requirement of § 416(h)(3)(C)(ii) liberally in face of hardship, and have indicated that in the proper case the arbitrary, although permissible, line drawn that dependency exists at the time of death will not bar an otherwise just claim. Jackson v. Richardson, CCH Unemployment Insurance Reports, ¶ 16,767

9. While it is true the benefits in Gregory Norton's case will never be used if not for him, such would not always be the case, for the maximum benefits are frequently exhausted without all eligible children receiving a full entitlement. *See, e. g.,* Griffin v. Richardson, 346 F.Supp. 1226 (D.Md.1972), affirmed, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1973) ; Davis v. Richardson, 342 F.Supp.

588 (D.Conn.1972), affirmed, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1973). Although it may not be inequitable or uncharitable to permit Gregory Norton to receive the benefits in preference to their lapsing, for the court to do so would, because of the class action aspect of the case, if not by *stare decisis* alone, lay the groundwork for future inequities.

(S.D.W.Va.1972); Crisp v. Richardson, CCH Unemployment Insurance Reports, ¶ 16,612 (W.D.N.C.1972); Bridges v. Sec. of HEW, CCH Unemployment Insurance Reports, ¶ 16,480 (E.D.N.Y. 1971); Mobley v. Richardson, CCH Unemployment Insurance Reports, ¶ 16,-439 (W.D.N.C.1971).

 Those courts which have considered the question of whether the Social Security Act can require proof of dependency from illegitimates have found the requirement permissible.[10] Beaty v. Weinberger, 478 F.2d 300 (5th Cir. 1973); Perry v. Richardson, 440 F.2d 677 (6th Cir. 1971); Watts v. Veneman, 334 F.Supp. 482 (D.D.C. 1971), affirmed in part, reversed in part on other grounds, 476 F.2d 529 (D.C. Cir. 1973). This court also, for the reasons stated, concludes the dependency requirements of § 416(h)(3)(C)(ii) do not invidiously discriminate against illegitimates or lack of rational relation to the Social Security Act's purpose or intent. Section 416(h)(3)(C)(ii) does not, therefore, violate the due process clause of the Fifth Amendment.

Because of the court's conclusion, summary judgment for defendant shall be entered separately under Rule 58, Fed.R.Civ.P. Counsel for defendant, with notice to counsel for plaintiff, shall submit a form of judgment in accordance with this opinion. The Clerk is directed to forward copies of this opinion to counsel.

## APPENDIX

42 U.S.C. § 402—Child's insurance benefits

(d)(1) *Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—*

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and

(i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, and

(C) *was dependent upon such individual—*

(i) if such individual is living, at the time such application was filed,

(ii) if such individual has died, *at the time of such death,* or

(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,

*shall be entitled to a child's insurance benefit* for each month, beginning with the first month after August 1950 in which such child becomes so.

. . .

(d) (3) *A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—*

(A) *such child is neither the legitimate nor adopted child of such individual,* or

(B) *such child has been adopted by* some other individual.

*For purposes of this paragraph, a child deemed to be a child of a fully or cur-*

---

10. In fact, in every lower court and Supreme Court case where impermissible discrimination against illegitimates was invalidated, with the exception of Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the illegitimates were either found or assumed by the court to be actually dependent. The *Gomez* case is exceptional only because it dealt with an illegitimate child's right to become dependent.

rently insured individual pursuant to section 416(h)(2)(B) or section 416 (h)(3) of this title shall be deemed to be the legitimate child of such individual.

42 U.S.C. § 416—Additional definitions

For the purposes of this subchapter—

(e)The term "child" means (1) the child or legally adopted child of an individual, and (2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed or (if the insured individual is deceased) not less than nine months immediately preceding the day on which such individual died . . .

42 U.S.C. § 416(h)(2)—Determination of family status

(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

(B) If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony

resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.

42 U.S.C. § 416(h)(1)(B) (last sentence)

. . . For purposes of this subparagraph, a legal impediment to the validity of a purported marriage includes only an impediment (i) resulting from the lack of dissolution of a previous marriage or otherwise arising out of such previous marriage or its dissolution, or (ii) resulting from a defect in the procedure followed in connection with such purported marriage.

42 U.S.C. § 416(h)

(3) An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

(C) in the case of a deceased individual—

(i) such insured individual—

(I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.