Gregory B. NORTON, Jr., a minor, by his next friend, Marian B. Chiles, Individually and on behalf of all others similarly situated

v.

Caspar W. WEINBERGER, Secretary, Department of Health, Education and Welfare, Individually and in his official capacity.

Civ. No. 72-271-B.

United States District Court,
D. Maryland.

Feb. 28, 1975.

C. Christopher Brown, Baltimore, Md., for plaintiffs.

Carla A. Hills, Asst. Atty. Gen., New York City, Harland F. Leathers and Bruce E. Titus, Attys., Dept. of Justice, Washington, D. C., George Beall, U. S. Atty., D. Md., and Jeffrey White, Asst. U. S. Atty., Baltimore, Md., for defendant.

Before WINTER, Circuit Judge, and MURRAY and BLAIR, District Judges.

## OPINION

BLAIR, District Judge.

Our judgment in Norton v. Weinberger, 364 F.Supp. 1117 (D.Md.1973)[1] was vacated and the case remanded by the Supreme Court for reconsideration in light of Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). Upon reconsideration, aided by the briefs and arguments of counsel, we are persuaded that *Jimenez* neither compels nor justifies any change in our earlier opinion and judgment. We will review briefly the two decisions and note our reasons for this conclusion.

### Our Decision in Norton

Gregory Norton, although shown by evidence satisfactory to the Secretary to be the child of a deceased insured individual, was denied benefits under 42 U.S.C., §§ 402(d)(1), 402(d)(3), 416(h)(3)(C)(ii) because it could not be shown that prior to his death his father had lived with or contributed to his support. Not being eligible for benefits under any other provisions of the Act, Norton sought, among other relief, a declaration of the unconstitutionality of § 416(h)(3)(C)(ii). We held that the denial of benefits to Norton because he was not dependent on his father within the terms of the Act did not deny him equal protection of the laws as guaranteed by the due process clause of the Fifth Amendment. While our earlier opinion in *Norton* speaks for itself and need not be repeated here, a few points should be noted.

First, on the issue of the constitutionality of the statute's scheme for showing dependency, we refused to hold that illegitimacy is a "suspect classification." Thus, we refused to apply a "strict scrutiny" or "compelling governmental interest" standard in reviewing the Act. Rather, we applied the type of equal protection analysis which the Supreme Court discussed in Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

Second, we rejected the plaintiff's suggestion that Congress intended, by the child's insurance benefits provisions, to aid every child of a deceased individual. Instead, we concluded that the primary purpose of the insurance provisions was to aid dependent children. In

---

1. *See also* Norton v. Richardson, 352 F.Supp. 596 (D.Md.1972).

the words of the Senate Report accompanying the 1965 Amendments, the insurance program was "intended to pay benefits to replace the support lost by a child when his father retires, dies, or becomes disabled." S.Rep. No. 404, 89th Cong. 1st Sess. (1965), 1965 Code Cong. & Admin.News, pp. 1943, 2050.

Third, after determining that the primary purpose of the Act was to replace support lost by a child, we analyzed the statutory scheme of categories and presumptions and concluded that it bore a rational and substantial relationship to the principal goal of the Act.

### The Supreme Court's Decision in Jimenez

Eugenio and Alicia Jimenez were illegitimate children conceived and born after their father became disabled. From their birth, they lived with and were supported by their father and he acknowledged them as his children. Under Illinois law, however, they were not able to inherit from their father and were classified as illegitimates because their parents never married. Since they were born after the onset of their father's disability—the event insured against—he could not have acknowledged them, nor have been ordered by a court to make support payments, nor decreed by a court to be their father prior to his disability. *Jimenez,* 417 U.S. at 630–31, 94 S.Ct. 2496. *See* § 416(h)(3)(B)(i). Similarly, it was impossible for the children to demonstrate that their disabled father lived with them or contributed to their support at the time his disability began. *See* 416(h)(3)(B)(ii). Dissimilarly, their older illegitimate sister was eligible to receive benefits because she was conceived prior to the father's disability and had lived with him and received his support at the requisite time. *Jimenez* at 630–31, 94 S.Ct. 2496. Thus, while the older sister was eligible to receive benefits, the two after-born Jimenez children were unable to satisfy any of the alternate prerequisites to receive like treatment. *See* §§ 402(d)(3), 416(h)(2)(B), 416(h)(3)(B).

In *Jimenez,* the Supreme Court took a very narrow approach. In an opinion by Chief Justice Burger, the Court did not pose the issues in terms of discrimination between legitimates and illegitimates, rather, it analyzed the plaintiffs' challenge in terms of discrimination between certain subclasses of illegitimates. *Jimenez* at 635–36, 94 S.Ct. 2496. By taking that approach, the Court had no reason to reach the question of whether illegitimacy is a "suspect classification," and, it expressly refused to reach that issue. *Id.* at 631–32, 94 S.Ct. 2496.

The Supreme Court focused its analysis upon the fact that the Jimenez children were denied benefits solely because they were conceived and born after the onset of their father's disability. The Court began by determining that "the primary purpose of the contested Social Security scheme is to provide support for dependents of a disabled wage earner." *Jimenez* at 633–34, 94 S.Ct. at 2500. In identifying that goal, the Court rejected the argument that the Act's purpose was to aid only children who were dependent at the time of the disabling injury. *Id.* at 634–35, 94 S.Ct. 2496. In the Court's view, Congress intended to aid all dependent children.

Having identified the primary purpose of the Act, the Court noted that after-born illegitimate children were for practical purposes divided into two subclasses. First, there were those who could recover without proving actual dependency prior to the disability, because they were presumed by the Act to be dependent at the requisite time. Second, there were those after-born illegitimates who were denied benefits, solely by reason of the timing of their births, because they could not possibly demonstrate dependency at the time their parent was disabled. Included within the latter class were children who, like Eugenio and Alicia Jimenez, were genuinely dependent upon their disabled parent.

The conclusive exclusion of such after-born children, the Court held, could not be justified solely on the basis of a claimed desire to avoid spurious claims. *Jimenez* at 636–37, 94 S.Ct. 2496. The Court wrote,

> [T]he Act's definition of these two subclasses of illegitimates is "over-inclusive" in that it benefits some children who are legitimated, or entitled to inherit, or illegitimate solely because of a defect in the marriage of their parents, but who are not dependent on their disabled parent. Conversely, the Act is "under-inclusive" in that it conclusively excludes some illegitimates in appellants' subclass who are, in fact, dependent upon their disabled parent. Thus, for all that is shown in this record, the two subclasses of illegitimates stand on equal footing, and the potential for spurious claims is the same as to both; hence to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the law guaranteed by the due process provisions of the Fifth Amendment.

*Id.* at 637, 94 S.Ct. at 2502.

On remand, the Court directed that the Jimenez children were to be afforded an opportunity to demonstrate their eligibility by showing "that [they] are the children of the claimant, that they lived with the claimant all their lives, that he has formally acknowledged them to be his children, and that he has supported and cared for them since birth." *Jimenez* at 637–38, 94 S.Ct. at 2502.

### The Act

Norton, like Jimenez, involves an attack upon the Social Security Act's scheme for providing benefits to children of persons insured under the Act. Although *Jimenez* involved disability benefits, while *Norton* involves survival benefits, the basic mechanics are essentially similar and involve either identical or parallel provisions of the act.

As they relate to *Norton*, we synthesize our understanding of the pertinent provisions of the Act. The term "child" means "the child or legally adopted child of an individual" as well as certain stepchildren and grandchildren. § 416(e).[2] A child is entitled to benefits [3] if at the time of the event insured against the child was "dependent" upon the insured individual. § 402(d)(1). Legitimate and adopted children are "deemed dependent". § 402(d)(3). Children of marriages which are invalid for specified reasons, § 416(h)(2)(B), and children who at specified times have been (a) acknowledged in writing by the insured individual, or (b) decreed by a court to be the child of an insured individual, or (c) the beneficiary of an order of court directing the insured individual to provide support are deemed to be the children of the insured individual, § 416(h)(3)(C)(i), and are also "deemed legitimate" and thereby "deemed dependent." § 402(d)(3).

As an alternate means of showing eligibility for benefits, a child who at the time of the event insured against could inherit personalty through intestate succession by the laws of the insured's state of domicile (with qualifications not pertinent) is deemed to be the child of the insured individual from whom he could inherit. § 416(h)(2)(A). However, by the provisions of § 402(d)(3), such a child is not deemed legitimate and hence is not deemed dependent. Thus, as we read these provisions of the Act (which appears to be contrary in part to the Supreme Court's reading to which we will address ourselves later), a child seeking to show eligibility for benefits on the basis of the right to intestate succession must also show that he was

---

**2.** Further definition of "child" is provided by § 416(h)(2)–(3).

**3.** Throughout our discussion of entitlement to benefits, we assume that the applicant child satisfies age, marital and filing requirements and has not been legally adopted by another.

living with or supported by the insured individual. § 402(d)(3).

Similarly, where a child cannot show eligibility under any of the foregoing provisions, eligibility may be shown by evidence satisfactory to the Secretary that the insured individual was the father of the child and lived with or contributed to the support of the child at the time of death. § 416(h)(3)(C)(ii). It is this provision that Norton attacks.

### The Effect of Jiminez Upon Our Prior Decision

■ At the outset, two points concerning *Jimenez* may be easily stated. First, the Supreme Court did not use *Jimenez* as a vehicle for holding that illegitimacy is a "suspect classification" which requires "strict scrutiny" analysis. Rather, the Supreme Court expressly refused to reach that issue. *Jimenez,* 417 U.S. at 631–32, 94 S.Ct. 2496. Thus, we see no reason to alter our prior opinion in that respect. *See* Norton v. Weinberger, 364 F.Supp. 1117, 1122 (D. Md.1973).

■ Second, we do not read the Court's opinion in *Jimenez* to require any change in our previous conclusion that the primary purpose of the Social Security Act is to aid children who are actually dependent, as opposed to potentially dependent. Indeed, if anything, the Supreme Court appears to concur in our assessment of the statute's goal. In *Jimenez,* the Court stated in simple terms that "the primary purpose of the contested Social Security scheme is to provide support for dependents of a disabled wage earner." *Jimenez,* 417 U.S. at 634, 94 S.Ct. at 2500. If, as plaintiff suggests, the Supreme Court had meant that the primary purpose was to aid potential dependents or to aid all children who have not been adopted by third persons, we believe that it would have said so more directly. Also, the Court would not have remanded for proceedings to determine whether or not the disabled father lived with or contributed to the support of the Jimenez children. In any

event, the plaintiff's construction of congressional intent would make utterly inexplicable the complex provisions of the statutory scheme. Surely if Congress had intended to aid all children regardless of dependency it could have said so without devoting approximately 80 lines of the statute's text to defining who is deemed "dependent." *See* 42 U.S.C. §§ 402(d)(3), 416(h)(2)(B), 416(h)(3).

Turning from those specific points to the general constitutional analysis by the Court, we find nothing which would require us to change our prior decision. As we interpret the Court's opinion in *Jimenez,* the thrust of that opinion was that Eugenio and Alicia Jimenez, and the members of their class, could not be refused benefits without their first being afforded a realistic opportunity to prove that they were living with their parent or supported by him. In other words, the Court did not hold that Eugenio and Alicia were entitled to the same presumption of dependence as is afforded to certain other children. Instead, it merely ruled that, in light of the rest of the statutory scheme, afterborn children in Eugenio and Alicia's class, may not be required to prove the impossible, i.e., dependence prior to their conception. *See Jimenez* at 636–38, 94 S.Ct. 2496.

That general analysis by the Supreme Court in *Jimenez* has no application to *Norton* for two reasons. In the first place, unlike Eugenio and Alicia Jimenez, the plaintiff here is not now, and never has been, dependent upon his father. Thus, in contrast to the Jimenez children, Norton has not been arbitrarily denied benefits despite actual dependency. Norton was denied benefits because, in fact, he never was dependent and because Congress never intended to aid Norton's class of nondependents.

In the second place, it is manifest that the narrow form of discrimination which was dealt with in *Jimenez*—i.e., discrimination against certain after-born children—cannot possibly arise in the context of survivors benefits. It will be

recalled that in *Jimenez,* the plaintiff children were in fact dependents at the time they applied for disability benefits, but they were denied benefits because, as they were after-conceived and after-born, they could not possibly prove that their father was living with them or contributing to their support at the time of the onset of his disability. By contrast, in the context of death benefits, no child is conclusively barred from recovering benefits solely because of the timing of his birth. Each child has a realistic opportunity to prove dependency at the requisite time for the obvious reason, that once deceased, the alleged parent is not going to father any more children. Thus, in the context of survivors benefits, only nondependents will fail to recover. Even the hypothetical child who is conceived prior to his father's death, but who is born afterwards, will recover if, at the time of his death, the father was living with the then-pregnant mother or was contributing to her support. *See* Wagner v. Finch, 413 F.2d 267 (5th Cir. 1967).[4] Accepting the rationale of the Fifth Circuit in Wagner v. Finch, *supra,* not only do we view Norton's complaint as different from that of the Jimenez children, we can perceive of no situation where a child of a deceased insured could ever pose the problem raised in *Jimenez.*

The statutory scheme for survivors benefits may be "overinclusive" in that some nondependents can recover benefits but it is not "underinclusive." [5] That is, although there will, of course, be *nondependent* children who cannot recover, there will be no *dependent* children who are unable to prove dependency at the requisite time. Consequently, the Supreme Court's narrow equal protection analysis in *Jimenez*—turning as it does upon the irrational exclusion of certain *after-born dependent* illegitimates from the class of dependent children generally —has no impact here nor upon any child seeking survivors benefits.

Finally, while we do not believe that the Supreme Court's constitutional analysis in *Jimenez* requires us to modify either the results or the analysis of our prior opinion, another aspect of the *Jimenez* opinion requires some additional comment. As indicated above, our prior decision in this case was premised upon our conclusion that the statutory scheme of classifications and presumptions was substantially and rationally related to the Act's purpose to aid dependent children of deceased wage earners. Accordingly, it is crucial that our understanding of the statute's classifications and presumptions was correct. With that in mind we must deal with a discrepancy between a narrow part of our interpretation of the Act and a part of the Supreme Court's description of the Act in *Jimenez.* The difference arises over whether or not an individual who has the status of child under the laws of intestate succession in the insured individual's state of domicile is automatically deemed dependent. While we thought not, *Jimenez* might suggest otherwise. *See* §§ 402(d)(1), 402(d)(3), 416(h)(2) (A). *Compare* Jimenez v. Weinberger, 417 U.S. 628, n.2 at 631, 635–36, 94 S.Ct.

---

4. It is worth noting that in the Supreme Court's opinion in *Jimenez,* the Court wrote that Eugenio and Alicia's older sister, Magdalena, was entitled to benefits for her father's disability "because she had been *conceived* before Jimenez became disabled . . . ." Jimenez v. Weinberger, 417 U.S. 628, 631 (1974). (Emphasis added). Since we know from the district court opinion that, in fact, Magdalena had been *born* prior to her father's injury, the Supreme Court's choice of the word "conceived" appears to signify acceptance of the reasoning in Wagner v. Finch. *See* Jimenez v. Richardson,

353 F.Supp. 1356, 1358–59 (N.D.Ill.1973) (per curiam).

5. Norton, a nondependent child, cannot argue that the scheme for benefits denies equal protection merely because the statute's categories enable some nondependent children to get a free ride. The statute need not be perfectly drawn. It is enough that the statute's classifications are substantially and rationally related to the Act's permissible purpose, that it infringes on no suspect classifications, and that no conclusive presumptions operate to exclude arbitrarily those whom the statute is designed to aid.

2496, 41 L.Ed.2d 363 (1974), *with* Norton v. Weinberger, 364 F.Supp. 1117, 1119 (D.Md.1973).

Before discussing the discrepancy, we should note that, as we read its opinion, the Court's description of the portion of the Act in question was in the nature of general background. Therefore, it does not appear to have been necessary to the Court's conclusion that the Act unconstitutionally denied the after-born Jimenez children an effective opportunity to prove their dependency. While we proceed with caution and deference, we reiterate our belief that the part of the discussion in *Jimenez*, which we have noted was not essential to the holding.

■ In analyzing this issue of statutory interpretation, we have reviewed again the language of the Act. Furthermore, we have searched the history of amendments to the Act in order to trace the development of insurance benefits for children,[6] and we have read pertinent portions of the legislative history. After this analysis, we have again returned to our earlier view that a child of an insured individual is not deemed "dependent" by the Act merely because he happens to be eligible to inherit personalty under the laws of intestate succession in the insured's state of domicile.[7] In our view, both the language of the Act and its history support the conclusion that state laws of intestate succession are invoked by § 416(h)(2)(A) merely to provide the Secretary with a method for determining who is a "child" of an insured individual and not for determining who is a "dependent" child.

Treatment of this issue of statutory meaning is best accomplished by quoting the relevant portions of the statute.

Section 402(d)(1), the basic recovery section, provides in relevant part:

§ 402(d)(1)

Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

. . . . . .

(C) was dependent upon such individual—

. . . . . .

shall be entitled to a child's insurance benefit . . . .

Thus, according to § 402(d)(1), a "child" must be "dependent" in order to be entitled to benefits.

In turn, §§ 416(e), 416(h)(2), and 416(h)(3) define who is a "child" for purposes of distributing these insurance benefits. Section 416(e) provides an initial definition of the term "child" which, in addition to natural and adopted children, reaches certain stepchildren and grandchildren. For our purposes, it is enough to quote the opening words of § 416(e): "The term 'child' means (1) the child or legally adopted child of an individual . . . ."

As § 416(e) provides little guidance, one must turn to §§ 416(h)(2) and (h)(3) for further explication of the term "child." Section 416(h)(2)(A) provides:

§ 416(h)(2)(A)

In determining whether an applicant is the child . . . of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolu-

---

6. *See* Social Security Act Amendments of 1950, Ch. 809, §§ 202(d)(1), 202(d)(3), 216(h)(1), 64 Stat. 483–84, 511 (1950); Social Security Amendments of 1958, P.L. 85–840, § 205(d), 72 Stat. 1022 (1958); Social Security Amendments of 1960, P.L. 86–778, § 208(b)–(d), 74 Stat. 951 (1960); Old-Age, Survivors, and Disability Insurance Amendments of 1965, P.L. 89–97, § 339(a)–(b), 79 Stat. 409 (1965).

7. This is significant to the ultimate result in *Norton* because, if an individual were deemed dependent due to the unrelated circumstance that he is favorably treated under his state's intestacy laws, a significant question would be raised about the rational basis for the statutory scheme.

tion of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death . . . . Applicants who according to such law would have the same status relative to taking intestate personal property as a child . . . shall be deemed such.

Continuing, the Act states

§ 416(h)(2)(B)

If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.

Finally, it adds

§ 416(h)(3)

An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

.     .     .     .     .     .

(B) in the case of an insured individual entitled to disability insurance benefits . . .—

(i) such insured individual—

(I) has acknowledged in writing that the applicant is his son or daughter,

(II) has been decreed by a court to be the father of the applicant, or

(III) has been ordered by a court to contribute to the support of the applicant because the applicant is his son or daughter,

and such acknowledgment, court decree, or court order was made before such insured individual's most recent period of disability began; or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of that applicant at the time such period of disability began;

(C) in the case of a deceased individual—

(i) such insured individual—

(I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

It can be seen from the above-quoted sections that only a "dependent" child recovers, § 402(d)(1), and it can also be seen who meets the definition of "child," §§ 416(e), 416(h)(2)–(3). It is lastly necessary to determine who is deemed by the Act to be *"dependent."* Section 402(d)(3) is the critical provision for defining "dependent":

§ 402(d)(3)

A child shall be deemed dependent upon his father or adopting father or

his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—

 (A) such child is neither the legitimate nor adopted child of such individual, or

 (B) such child has been adopted by some other individual.

*For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual.* (Emphasis added).

Translation of the awkward series of negatives in the first sentence of § 402(d)(3) leads to a simpler basic formula—a child is deemed dependent (a) if his insured parent lived with him or contributed to his support or (b) if he is the legitimate or adopted child of the insured parent and he has not subsequently been adopted by a third person. Nothing in the first sentence exempts a child who can inherit under state intestacy laws from showing that the insured parent was living with him or contributing to his support.

Likewise, the second sentence of § 402(d)(3) does not deem to be legitimate (and, therefore, dependent) a child seeking to show eligibility under the intestate succession language of § 416(h)(2)(A). To the contrary, while the second sentence of § 402(d)(3)(A) expressly deems to be legitimate (and, therefore, dependent) children who qualify under §§ 416(h)(2)(B) and 416(h)(3), no reference is made to individuals who meet the definition of "child" under § 416(h)(2)(A). The omission of any reference to § 416(h)(2)(A) is conspicuous and, moreover, it is consistent with the evolution of these provisions of the Act.[8] Thus, an applicant for benefits who is a "child" under § 416(h)(2)(A) (i. e., one who has the status of a child under state intestacy laws), without more, still has to prove that the parent was living with or contributing to the support of such child.

On the basis of the above-quoted statutory language, we do not think it necessary to modify our earlier opinion with regard to our assessment of the rationality of the statute's classification scheme. Absent constitutional infirmity, we hold no warrant to eviscerate a congressionally enacted plan to provide benefits to children of individuals insured under the Act. We perceive no such infirmity.

*Conclusion*

For the reasons stated above, we reaffirm our previous opinion and summary judgment will be entered separately in favor of the defendant.

WINTER, Circuit Judge (dissenting):

I respectfully dissent. In my view the decision in Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), requires us to alter our decision in Norton v. Weinberger, 364 F.Supp. 1117 (D.Md.1973), vacated and remanded, 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed. 2d 1150 (1974) (*Norton I*), and to hold that the portion of the statute attacked denies equal protection of the laws and should be declared invalid. Since the Secretary has found that the deceased wage earner, Gregory B. Norton, Sr., was the father of the claimant, I would remand the case to the Secretary with directions to award the claimed survivor's benefit.

I.

I begin with an analysis of *Jimenez*, interspersed with comments on how it supersedes our prior holding. In *Jimenez*, the claimants, or applicants for disability benefits, were the illegitimate children of a disabled wage earner. They had been born after the onset of the wage earner's disability. The statutory scheme in *Jimenez* provided that

---

8. *See* footnote 6, *supra*.

when a wage earner suffers "disability," defined elsewhere in the Act, his legitimate children, under certain ages or under a disability themselves, are entitled to benefits if, *inter alia*, they were dependent on the disabled wage earner. § 202(d)(1) of the Act, 42 U.S.C. § 402(d)(1). Legitimate children are deemed dependent on the disabled wage earner irrespective of whether they live with him or he contributes to their support. § 202(d)(3) of the Act, 42 U.S.C. § 402(d)(3). By certain of the provisions of § 216, 42 U.S.C. § 416, which bear a marked similarity to the other provisions of § 216 which were considered in *Norton I*, certain illegitimate children can also recover benefits, i. e., illegitimate children entitled to inherit under the intestacy laws of the state (42 U.S.C. § 416(h)(2)(A)),[1] children not entitled to inherit only because of some formal defect in their parents' marriage (42 U.S.C. § 416(h)(2)(B)), and illegitimate children if the wage earner's paternity has been established, prior to the beginning of disability, by formal acknowledgment, court order for support, or court decree of paternity (42 U.S.C. § 416(h)(3)(B)(i). In the case of these classes of illegitimates as well, the statute deems them dependent on the disabled wage earner irrespective of whether they live with him or he contributes to their support. If a claimant fits none of these categories, the claimant is still entitled to benefits if the claimant can demonstrate paternity in fact *and* that the wage earner was living with or contributing to the support of the claimant *when the period of disability began* (42 U.S.C. § 416(h)(3)(B)(ii).

In *Jimenez*, the latter provisions were under attack—(a) that which required the birth of the child *before disability began*, and (b) that which imposed the condition of "living with" or "contributing to the support of" the claimant *when disability of the wage earner began*— even though paternity of the claimant had been established by evidence satisfactory to the Secretary. *Jimenez* held that the complete bar to after-born illegitimates denied equal protection of the

---

1. In *Jimenez*, it is stated flatly that "[u]nder the statute it is clear that illegitimate children born after the wage earner becomes disabled qualify for benefits if state law permits them to inherit from the wage earner, § 416(h)(2)(A)." 417 U.S. at 634, 94 S.Ct. at 2501. With protestations of due deference and respect, the majority opinion undertakes to prove the statement inaccurate, as indeed it concedes that it must in order to preserve its thesis that Gregory B. Norton, Jr., has not been the subject of invidious discrimination. Majority opinion, n. 7.

I think the Supreme Court's statement accurate: § 402(d)(1) requires, *inter alia*, that a "child," to be entitled to a child's insurance benefit, be "dependent" upon the insured person entitled to an old-age or disability insurance benefit. By § 402(d)(3), so far as pertinent, a child is deemed dependent upon his father unless his father was not living with the child or contributing to his support *and* the child is neither the legitimate nor adopted child of the father. Section 416(h)(2)(A), however, states that "[i]n determining whether an applicant is the child . . . of a fully or currently insured individual . . . ," the Secretary shall apply the law relating to the devolution of intestate property in the state in which the insured individual is domiciled. It then

states, "[a]pplicants who according to such law would have the same status . . . as a child . . . *shall be deemed such.*" (Emphasis added.) The "child" that they are thus deemed to be is defined in § 416(e) to mean "the child or legally adopted child of an individual . . . ."

I read the statutes together to mean that an illegitimate who would inherit from his father under applicable state intestacy law is to be deemed a "child," and since he is deemed to be a "child," he is deemed dependent under § 402(d)(3). Even if he does not live with his father or is not supported by his father, the child does not fit into the exception in § 402(d)(3) for illegitimate or non-adopted children, because, by § 416(h)(2)(A), he is deemed to have the status of a legitimate child who may inherit. The fact that § 402(d)(3) makes special provision for illegitimates of the categories defined in §§ 416(h)(2)(B) and 416(h)(3), but not § 416(h)(2)(A), is not significant, because, again, § 416(h)(2)(A), as I read it, says that illegitimates who can inherit under state intestacy law are deemed to have the status of legitimate children (thus, rendering any further special treatment unnecessary), while §§ 416(h)(2)(B) and 416(h)(3) do not.

law.[2] It gave strong and clear indications that imposition of either of the alternatives of "living with" or "contributing to the support of" was similarly invalid.

In arriving at its holding, the Court declined to prescribe the quantum of proof which would be required to sustain a discrimination among illegitimates in the context of social security benefits.[3] The Court adopted, as basic, the premise that "the primary purpose of the contested Social Security scheme is to provide support for dependents of a disabled wage earner."[4] 417 U.S. at 634, 94 S.Ct. at 2500. Accordingly, it firmly and explicitly rejected the argument (on which *Norton I* is premised) that the "requisite economic dependency" within the purposes of the legislation is limited to actual support received prior to the event insured against, which, in *Jimenez*, meant prior to disability. 417 U.S. at 634, 94 S.Ct. 2496.[5] No such showing, the Court pointed out, is required of either legitimate children

2. In a suit of this nature between an individual and the federal government, the constitutional guarantee at issue is the fifth amendment and it, unlike the fourteenth amendment, contains no equal protection clause. However, it is established that the guarantee of equal protection of the laws is part of the concept of "due process" which the federal government must afford. Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

3. The Supreme Court declined to declare illegitimacy a "suspect classification" requiring "strict scrutiny," 417 U.S. at 631–32, 94 S.Ct. 2496, because it found that the discrimination in *Jimenez* was unconstitutional even under the somewhat looser and vaguer standard articulated in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175–76, 92 S.Ct. 1400, 1407, 31 L.Ed.2d 768 (1972): "the classification is justified by no legitimate state interest, compelling or otherwise." There are, however, numerous indications in recent Supreme Court opinions that, in a proper case, a majority of the Court would find that illegitimacy was a suspect classification. See Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 60, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (concurring opinion); Id. at 108, 93 S.Ct. 1278 (dissenting opinion); Sugarman v. Dougall, 413 U.S. 634, 657, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) (dissenting opinion). I, too, see no need to decide the issue, because I would conclude that the discrimination presented here fails under the *Weber* and *Jimenez* standards. I fear, however, that from the language of the majority opinion, n. 5, the majority harbors notions that the "rationally related" test of Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), has some application to his case. I call attention that application of *Dandridge* was specifically rejected in *Jimenez*. 417 U.S. at 632–34, 94 S.Ct. 2496.

4. *Citing* the House-Senate Committee Conference Report on 1965 Amendments to the Social Security Act, 111 Cong.Rec. 18387 (July 27, 1965); and the Report of the Advisory Council on Social Security, The Status of the Social Security Program and Recommendations for its Improvement, 67 (Washington, D. C., 1965). These documents speak of the Act as providing benefits if the insured father had an "obligation" or a "legal obligation" to support the child. In *Norton I*, the importance of this language in assessing the purposes of the Act was underestimated. There, the Court said only that it is "descriptive of the Act's effect." 364 F.Supp. at 1127, n. 6.

5. The language of the Court, apparently overlooked by the majority, could not be more specific:

The Secretary maintains that the Act denies benefits to . . . [certain classes of illegitimates] because it is "likely" that these illegitimates, as a class, will not possess the requisite economic dependency on the wage earner which would entitle them to recovery under the Act . . . . Under this view the Act's purpose would be to replace only that support enjoyed prior to the onset of disability; . . . . *We do not read the statute as supporting that view of its purpose.* (Emphasis supplied.)

417 U.S. at 634, 94 S.Ct. at 2500.

The court's reliance in *Norton I* on this discredited view of the purpose of the Act was expressed at several places in its previous opinion. See, e. g.:

The purpose of the Act, consistent with this dual concept, is to replace the support lost to a child when a wage earner dies.

364 F.Supp. at 1127.

or any other class of illegitimates.[6] Indeed, even under § 416(h)(3)(B)(ii), a claimant can establish entitlement to benefits without showing actual support if he can demonstrate paternity and the fact he was living with the wage earner prior to the period of disability. Furthermore, the Court's opinion rejected the Secretary's attempt to justify a requirement that illegitimates be born before the wage earner's death to entitle them to benefits on the basis that such claimants are less "likely to have the requisite economic dependency." [7] The Court went further and stated that "[e]ven if children might rationally be classified on the basis of whether they are dependent upon their disabled parent," the statutory scheme was both "under-inclusive" and "over-inclusive" —"deeming dependent" in some instances those who are not, and excluding in others those who are.[8] Thus, the Court found that these after-born illegitimates were on the "same footing" with regard to the purpose of the statute (to provide for dependents of insured wage earners) as others whose claim to benefits was conceded. The difference in treatment was, therefore, a denial of equal protection.[9] The Court remanded the case to the district court to allow the Secretary to contest the assertions of paternity, support, and acknowledgment of claimants, issues which he had not contested in the district court because he had defended the denial of benefits on the statutory exclusion of illegitimates born after the wage earner's disability.

As I have noted, the statutory definitions of eligibility about which *Jimenez* and *Norton I* revolved—§ 416(h)(3)(B) and (C), respectively—are, except for

---

6. It said:

   Indeed, as we have noted, those illegitimates statutorily deemed dependent are entitled to benefits regardless of whether they were living in, or had ever lived in, a dependent family setting with their disabled parent.

   417 U.S. at 637, 94 S.Ct. at 2502.

7. 417 U.S. at 634, 637, 94 S.Ct. at 2496. In *Norton I*, the Court stated that it was "rational" for the statutory scheme to assume that the classes of children "deemed dependent" were the recipients of actual support, and likewise rational to require applicants in plaintiffs' class to prove that fact. 364 F. Supp. at 1128. Deference was granted to the factual assumptions underlying the statutory scheme in reliance, *inter alia,* on Dandridge v. Williams, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970). In *Jimenez,* however, the Court held that the *Dandridge* reasoning was inapplicable because "the purpose of the statutory exclusion of some after-born illegitimates . . . [was not] to achieve a necessary allocation of finite resources . . .," 417 U.S. at 634, 94 S.Ct. at 2500. In effect, a heavier and insupportable burden of justification was placed on the federal government than was placed on state governments in *Dandridge,* and the assumptions which were declared adequate to support the statutory classifications in *Norton I* were rejected by the Supreme Court in *Jimenez.* Compare *Norton I,* 364 F.Supp. at 1128, with *Jimenez,* 417 U.S. at 634, 94 S.Ct. 2396.

8. See note 6 supra. It is clear that the instant case presents the same problem of "over-inclusiveness" with regard to dependency. The government has argued, however, that the converse problem of under-inclusiveness is not presented because all claimants who were actually supported by the insured individual, or lived with him prior to his death would be eligible for benefits, including children conceived before, but born after, the death of the insured individual, Wagner v. Finch, 413 F.2d 267 (5 Cir. 1969). Even conceding the soundness of *Wagner's* holding that a child *en ventre sa mere* is living with the father when the father and the mother are living together, the government's argument cannot avoid the fact that many illegitimates who could prove neither actual dependency nor co-residence are concededly entitled to benefits. Of course it is not necessary that a statute be both under- and over-inclusive for it to deny equal protection. In any event, the premise of the government's argument is unsound, because in *Jimenez* it was stated that the purposes of the Social Security Act as a whole do not depend on actual contribution. Thus, to exclude Norton's claim on the basis of the absence of that factor is simply without rational basis; and this is true whether or not all the children who received actual support from deceased wage earners can recover or not.

9. 417 U.S. at 637, 94 S.Ct. 2496.

the event insured against, identical. Once actual paternity was established, the only difference between the requirement that plaintiff in the instant case must satisfy and that which the Jimenez children were obliged to meet, if the statute is read literally, is that, in the instant case, the crucial date is the date of death, while in *Jimenez* the crucial date was the beginning of disability. Otherwise, the requirement that the wage earner must be living with, or contributing to the support of, the applicant, is the same in both cases. In both cases, an illegitimate claimant was denied benefits by the Secretary because he had received no "actual contribution" to his support prior to the statutory cut-off date, and in both the Secretary maintained that it was rational to demand proof of actual support in that sub-class of illegitimates because it was less likely to be present than in other classes. Since Norton is treated differently from other classes of claimants on the same grounds which the Supreme Court held were inadequate to justify the different treatment of the *Jimenez* applicants, I would conclude that Norton is being denied equal protection of the law as well.

## II.

I turn to two factors on which the majority relies to distinguish *Jimenez* from the instant case. The first is that *Jimenez* was concerned with children born (or conceived) *after* the wage earner's date of disability, while the instant case concerns a child born *before* the date of death. Thus, it was physically impossible for the wage earner to contribute to the support of the *Jimenez* claimants, or to live with them, prior to the beginning of his date of disability. By contrast in *Norton*, Norton, Sr. could have contributed to the support of Norton, Jr., but did not; and Norton, Sr. could have lived with Norton, Jr. had Norton, Sr. not been in military service and stationed overseas. As a result, the majority reasons that when viewed

against the background of the majority's conviction—mistaken, I think—that the Act was designed to replace *only* loss of *actual* support, plaintiff has not been the subject of invidious discrimination.

The second is the Court's actual disposition of *Jimenez*, i. e., the remand to permit the claimants to establish, in an adversary proceeding, the truth of their allegations that they were the children of the disabled wage earner, that they lived with him all of their lives, that he acknowledged them as his children, and that he supported and cared for them since their birth. The significance of this disposition in that these are the very factors which would have made them eligible for benefits had they been present prior to the date of the wage earner's disability.

On the basis of both of these distinctions, the majority, in effect, infers that only the validity of the cut-off date, i. e., the date of the wage earner's death, was the point of decision in *Jimenez*: the Court was not invalidating the requirement that the wage earner live with or contribute to the support of the claimant as a condition of the claimant's eligibility—it was merely extending the time-span in which these conditions could be met. Thus, the *Norton I* result is unaffected, so the majority concludes, because Norton, Sr. could obviously not "live with" or "contribute to the support of" plaintiff after the former's death.

While I agree that *Jimenez* does not invalidate, *per se*, the alternate requirements of co-residence or actual support as conditions of eligibility, its reasoning, as well as its language, lead inevitably to that conclusion. It is true that the Court remanded the case to permit the claimants "to establish their claim to eligibility as 'children' of the claimant," 417 U.S. at 637–38, 94 S.Ct. at 2502, and this I read to require a showing of dependency. But the opinion seems to make clear that, under the Act, actual support is not a necessary aspect of the concept of dependency. As I have previously stated, the legislative history the

Court cites for "the primary purpose" of the Act speaks of the "right to support,"[10] and the opinion emphasizes in particular the inconsistency and injustice of requiring this particular subgroup of illegitimates to make a showing of actual contribution while not requiring a similar showing of any other class of applicants.[11] At another point, the Court seems to equate "dependency," "claim to support," and "right to eligibility."[12] Of course, a claim to support, or a right of support arises from the fact of paternity alone, and it is only the fact of paternity that other subclasses of illegitimates are required to establish (by formal acknowledgment, court order, or court decree) in order to receive benefits. To me, it seems an inescapable conclusion from the premise that the Act was designed to provide a substitute for loss of the *right* to support, and not merely a substitute for loss of *actual* support, that proof of paternity alone, which gives rise to the right to support, is all that is needed to entitle this sub-class of illegitimates to benefits, that the purposes of the Act are fully served by proof of paternity alone and that a requirement of proof of more by this sub-class of illegitimate claimants results in invidious, unequal treatment. This I conceive to be the real thrust of *Jimenez* which the majority misses.[13]

I place no contrary significance on the terms of the remand in *Jimenez*. The remand merely referred inclusively to the allegations made by the claimants in support of their claim; it did not purport to establish a standard of eligibility. Although the claimants had alleged as facts all of the issues that the remand directed to be explored, none had been previously considered or litigated, because of the undisputed fact that the birth of two of the children had followed the beginning of the wage earner's disability by two and five years, respectively. It seems fairly obvious that since the provision of the statute making the fact of subsequent birth an automatic disqualification was invalidated, it was appropriate to order a full adversary evidentiary exploration of all of the allegations to determine what sort of case the claimants could prove and what statutory standards governing eligibility would be applicable. The Court did not say that all of the allegations must be proved for the claimants to recover; and I do not infer that the Court meant that all, or even some combinations, of the allegations must be proved by the *Jimenez* claimants to establish their entitlement to benefits. This is so because there can be no question that certain combinations—for example, formal acknowledgment of paternity and actual support—are plainly more than what is required under the Act once the limitation on the time of acknowledgment was removed. Moreover, although the

---

10. See n. 4, supra.

11. 417 U.S. at 634, 636–37, 94 S.Ct. 2496.

12. The Court said:
Their dilemma is compounded by the fact that the statute denies them any opportunity to prove dependency in order to establish their "claim" to support and, hence, their right to eligibility.
417 U.S. at 635, 94 S.Ct. at 2501. While it is difficult to be sure of what this means, the phrase "claim to support" is pointless in the sentence if it is not the counterpart of both dependency and eligibility.

13. Unlike the majority, I am not disturbed by the fact that this conclusion renders superfluous "approximately 80 lines of the statute's text . . . defining who is deemed 'dependent.'" It must be remembered that the Act, not simple in form at the time of its original enactment, has grown by accretion over a time span of approximately forty years. It is not surprising that in this period there have been refinements, extensions and modifications of congressional purpose and that there may be surplusage in congressional articulation. Unquestionably, there is other overlap between §§ 416(h)(2)(B) and 416(h)(3). What impresses the majority is more an argument for the need for restatement of the terms and provisions of the Act than a reason not to give effect to the Fifth Amendment.

remand directs attention to allegations beyond actual paternity, such facts as co-residence, acknowledgment and support, if proved, could be persuasive corroboration of actual paternity and therefore highly relevant to the determination of that basic issue. Surely the Secretary would be entitled to consider them in determining whether paternity was established "to [his] satisfaction." 42 U.S.C. § 416(h)(3)(B)(ii). The terms of the remand, thus, are not inconsistent with my conclusion that for the sub-class of illegitimates, of which plaintiff is a member, proof beyond that of paternity of the deceased wage earner may not be constitutionally required.

### III.

For these reasons, I would enter a judgment declaring unconstitutional the portion of § 216(h)(3)(C)(ii) of the Act, 42 U.S.C. § 416(h)(3)(C)(ii), which requires proof that "such insured individual was living with or contributing to the support of the applicant at the time such insured individual died." I would also remand the case to the Secretary, with the direction that plaintiff's claimed benefits be allowed dating from the death of Gregory B. Norton, Sr., because I see no need for further evidentiary proceedings.

In proceedings prior to the action to review, the Secretary found that Norton, Sr. was the plaintiff's father. As the court's opinion in Norton v. Richardson, 352 F.Supp. 596 (D.Md.1972), demonstrates, the evidence supporting this finding was not insubstantial. This is not a case where only the surviving mother claims that a deceased wage earner was the father of her child. By his act and deed, Norton, Sr. conceded paternity prior to his death, even to the point of taking positive, but legally ineffective, steps to provide a military allotment for the support of his son. On this record, unlike *Jimenez*, there is no need for further litigation.